RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
JAMES R. MacAYEAL
Trial Attorney Environmental Enforcement Section
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Telephone:     (202) 616-8777
Facsimile:     (202) 514-2583
E-mail:  jamie.macayeal@usdoj.gov
THOMAS P. O'BRIEN
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
JONATHAN B. KLINCK
Assistant United States Attorney
California Bar. No. 119926
300 North Los Angeles Street, Suite 7516
Los Angeles, California  90012
Telephone: (213) 894-8561
Facsimile: (213) 894-7819
Email: jon.klinck@usdoj.gov
Attorneys for the United States of America

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PRESERVATION AVIATION, INC, et al., | ) ) ) | |
|      Plaintiffs, | ) ) | Case No. SACV-07-1219-AG (MLGx) |
|      v. | ) ) | ANSWER, AFFIRMATIVE DEFENSES and COUNTERCLAIM |
| UNITED STATES OF AMERICA, et al., | ) ) ) | |
|      Defendants. | ) ) | |
| _____ | ) | |
| UNITED STATES OF AMERICA, | ) ) | |
|      Counter-plaintiff, | ) ) | |
|      v. | ) ) | |
| PRESERVATION AVIATION, INC. and JEFFREY PEARSON, | ) ) ) | |
|      Counter-defendants. | ) | |
| _____ | ) | |

1

2    The United States of America ("United States"), by the

3  authority of the Attorney General of the United States, and

4  through the undersigned attorneys, answers the complaint, asserts

5  affirmative defenses and counterclaims as follows:

6                              ANSWER

7    1.   The United States admits that Plaintiffs attempt to

8  base subject matter jurisdiction on 28 U.S.C. § 1331, 28 U.S.C. §

9  1346 and 42 U.S.C. § 1988, and that Plaintiffs have exhausted

10  their administrative remedies under the Federal Tort Claims Act,

11  and denies the remaining allegations contained in Paragraph 1.

12    2.   The United States admits that employees of the

13  Environmental Protection Agency ("EPA") are required to enforce

14  federal environmental laws according to the requirements of the

15  law and in a manner that is appropriate, and that the named

16  individual defendants acted within the scope of their official

17  duties, and denies the remaining allegations contained in

18  Paragraph 2.

19    3.   The United States admits that employees of the State of

20  California are required to enforce California environmental laws

21  according to the requirements of the law and in an appropriate

22  manner, but lacks knowledge or information sufficient to form a

23  belief as to the truth of the remaining allegations contained in

24  Paragraph 3 and therefore denies them.

25    4.   The United States admits employees of the Los Angeles

26  County Department of Health Services are required to enforce

27

28                              2

1  County environmental laws according to the requirements of the

2  law and in an appropriate manner, but lacks knowledge or

3  information sufficient to form a belief as to the truth of the

4  remaining allegations contained in Paragraph 4, and based on such

5  lack of information and belief, denies the allegations.

6      5.   The United States admits that Pen Air, Inc. or Pen Air

7  Parts (collectively "Pen Air")was owned and operated by Alexander

8  Fulks and that Pen Air purchased United States Government

9  manufactured surplus instruments.   The United States also admits

10  that Pen Air acquired inventory consisting of military surplus

11  aircraft parts and stored the inventory at a facility in North

12  Hollywood, California, specifically at 5543 Riverton Ave., North

13  Hollywood, California.   The United States also admits that the

14  items stored at 5543 Riverton Ave. included radium dials, and

15  that radium dials provided the ability to see instruments during

16  night operations.   The United States denies that only five

17  percent of the Pen Air inventory contained radium, and alleges

18  that approximately thirty percent contained radium. The United

19  States lacks knowledge or information sufficient to form a belief

20  as to the truth of the remaining allegations contained in

21  Paragraph 5, and based on such lack of information and belief,

22  denies the allegations.

23      6.   The United States admits that radium is a naturally

24  occurring element that emits radiation.   The United States

25  further admits that when combined in minute amounts with

26  phosphorescent paint and applied as markings to the surface of a

27

28                                  3

1  watch, clock, or instrument dial, such markings will glow in the

2  dark.   The United States lacks knowledge or information

3  sufficient to form a belief as to the truth of the remaining

4  allegations contained in Paragraph 6, and based on such lack of

5  information and belief, denies the allegations.

6        7.    The United States admits that EPA personnel discussed

7  previous onsite fires with Mr. Pearson.  The United States also

8  admits that the site contained numerous instruments such as

9  radium dials which could leak radon gas into the atmosphere, but

10  lacks knowledge or information sufficient to form a belief as to

11  the truth of the remaining allegations contained in Paragraph 7,

12  and based on such lack of information and belief, denies the

13  allegations.

14        8.    The United States admits that on August 19, 1996,

15  Preservation Aviation purchased the Penn Air inventory and

16  assumed the lease at 5543 Riverton Ave., North Hollywood,

17  California, and that Jeffrey Pearson moved some of the inventory

18  to hanger facilities located at the Chino Airport in Chino,

19  California.  The United States admits that the inventory acquired

20  by Preservation Aviation included surplus military aircraft

21  instruments and other components that Penn Air itself acquired

22  directly from the U.S. Government in military surplus sales.  The

23  United States lacks knowledge or information sufficient to form a

24  belief as to the truth of the remaining allegations contained in

25  Paragraph 8, and based on such lack of information and belief,

26  denies the allegations.

27

28                                    4

9.    The United States admits that states may license aircraft instruments containing radium.  The United States denies that radium containing items are not subject to regulation by the Nuclear Regulatory Commission.  See 72 Fed. Reg. 55864 (October 1, 2007) (bringing certain uses of radium-226 under NRC regulation).  The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 9, and based on such lack of information and belief, denies the allegations.

10.    (First Paragraph 10.)  The United States admits that the federal government sold radium-dial instruments and components in military surplus sales after World War II through the 1980s.  The United States admits that radium-dial instruments could be purchased through companies such as Pen Air.  The United States admits that federal aviation regulations (14 C.F.R. § 21.303) permit approved parts to be used as replacements.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in First Paragraph 10, and based on such lack of information and belief, denies the allegations.

10.    (Second Paragraph 10.)  The United States admits that EPA removed inventory for off-site disposal because that inventory posed a threat to human health and the environment. The United States admits that its removal action was under authority of Section 104(a) of the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended, 42

U.S.C. § 9604(a)(hereinafter "CERCLA" or "Superfund"), as

delegated by the President of the United States.  The United

States denies the remaining allegations contained in Second

Paragraph 10.

    11.  The United States denies the allegations contained in

Paragraph 11.

    12.  The United States admits that Preservation Aviation was

required to obtain a license from California authorities to

handle radioactive materials such as instrument dials containing

radium, that EPA put a 24-hour guard on the facility in North

Hollywood, and that in May 2004 EPA commenced site stabilization

efforts (often, and in this case, the first steps of an emergency

removal action) under authority of Section 104(a) of CERCLA, 42

U.S.C. § 9604, as delegated by the President of the United

States.  The United States also admits that because there was a

release and threatened release of hazardous substances at or from

the facility and from the radium dials, EPA removed all the

instruments stored at the site and disposed of them offsite.  The

United States lacks knowledge or information sufficient to form a

belief as to the truth of the allegations regarding the

negotiations between Mr. Pearson and non-federal authorities

contained in Paragraph 12, and based on such lack of information

and belief, denies the allegations.  The United States denies the

remaining allegations contained in Paragraph 12.

    13.  The United States admits that, in February 2006, EPA

gave notice to Mr. Pearson of his potential liability, and the

6

potential liability of Preservation Aviation, for EPA's response at the facility, and made a demand for reimbursement of those response costs in the amount of $6,044,299.27.  The United States denies the remaining allegations contained in Paragraph 13.

14.  The United States admits that EPA set a cleanup standard for hazardous substances at the facility sufficient to protect human health and the environment, and denies the remaining allegations contained in Paragraph 14.

15.  The United States admits that following the removal action at the North Hollywood facility, EPA personnel, including Mr. Robert Wise, commenced a statutorily authorized removal action at the Chino Airport facilities operated by Preservation Aviation and Mr. Pearson.  The United States denies the remaining allegations contained in Paragraph 15.

16.  The United States denies the allegations contained in Paragraph 16.

17.  The United States denies the allegations contained in Paragraph 17.

18.  The United States denies the allegations contained in Paragraph 18.

19.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning any emotional distress, anger, anxiety, worry, shame, humiliation, loss of self-esteem, mortification or chagrin on the part of Mr. Jeffrey Pearson and Ms. Ann Pearson, and based on such lack of information and belief, denies the allegations.  The

1  United States denies the remaining allegations contained in
2  Paragraph 19.

3       20.   The United States admits that plaintiffs have retained
4  the services of an attorney, but lacks knowledge or information
5  sufficient to form a belief as to the truth of the  allegations
6  regarding any fees paid by Plaintiffs, and based on such lack of
7  information and belief denies the allegations.  The United States
8  denies the remaining allegations contained in Paragraph 20.

9       21.   The United States denies the allegations contained in
10 Paragraph 21.

11      22.   The United States repeats its answers to Paragraphs 1
12 through 21 as though set forth in full herein.

13      23.   The United States denies the allegations contained in
14 Paragraph 23.

15      24.   The United States denies the allegations contained in
16 Paragraph 24.

17      25.   The United States repeats its answers to Paragraphs 1
18 through 21 as though set forth in full herein.

19      26.   The United States admits that EPA employees are
20 required to enforce environmental laws according to the
21 requirements of the law and in an appropriate manner.  The United
22 States denies the remaining allegations contained in Paragraph
23 26.

24      27.   The United States denies the allegations contained in
25 Paragraph 27.

26                      AFFIRMATIVE DEFENSES

27      1.   The removal action was authorized by Section 104(a) of
28 CERCLA and delegation from the President.

8

2.  Plaintiffs' claims are barred by sovereign immunity, including, but not limited to, 28 U.S.C. § 2680.

3.  The United States is entitled to a set-off against Plaintiffs' claims.

4.  On information and belief, Plaintiffs Jeffrey Pearson and Ann Pearson did not own the property that is the subject of the complaint and therefore lack standing to assert claims regarding that property.

5.  Plaintiffs' claims are barred by the Statutes of Limitations.

6.  Plaintiffs have failed to mitigate their damages, if any.

7.  Plaintiffs' negligence claims should be reduced by reason of plaintiffs' contributory negligence.

8.  The court lacks subject matter jurisdiction under the Tucker Act to the extent plaintiffs seek more than $10,000 in damages.

9.  Plaintiffs forfeited any property rights by failing to comply with licensing requirements for handlers of radioactive materials, as well as state and local cleanup orders.

10.  Punitive damages cannot be awarded against the United States.

11.  Prejudgment interest cannot be awarded against the United States.

12.  Plaintiffs fail to state a claim against the United States for constitutional torts.

13.  Plaintiffs fail to state a claim against the United States for conspiracy.

9

1    14.   Plaintiffs are not entitled to jury trial against the

2   United States under the Federal Tort Claims Act.

3    15.   Plaintiffs are not entitled to recover attorneys' fees

4   against the United States pursuant to the Federal Tort Claims

5   Act.

6    16.   There is no subject matter jurisdiction to support any

7   of Plaintiffs' claims against the United States.

8                              <u>COUNTERCLAIM</u>

9    The United States, by the authority of the Attorney General

10   of the United States, and through the undersigned attorneys, on

11   behalf of EPA, alleges against Counter-defendants Preservation

12   Aviation, Inc. and Jeffrey Pearson as follows:

13                             <u>INTRODUCTION</u>

14    1.   This counterclaim is a civil action under Section 107 of

15   the Comprehensive Environmental Response, Compensation, and

16   Liability Act of 1980, as amended, ("CERCLA"), 42 U.S.C. § 9607,

17   against Counter-defendants Preservation Aviation, Inc.

18   ("Preservation Aviation") and Jeffrey Pearson for the recovery of

19   costs that have been incurred by the United States in response to

20   a release or threatened release of hazardous substances at and

21   from the Preservation Aviation, Inc. property located at 10800

22   Burbank Boulevard and 5543 Riverton Avenue, North Hollywood,

23   California (the "Site").   In addition, the United States seeks

24   treble punitive damages and fines against Counter-defendants

25   Preservation Aviation and Jeffrey Pearson pursuant to Section

26   107(c)(3) of CERCLA, 42 U.S.C. § 9607(c)(3), and Section 106(b)

27   of CERCLA, 42 U.S.C. § 9606(b), based on their refusal to comply

28   with a Unilateral Administrative Order issued by EPA.   In

1   addition, the United States seeks civil penalties for the failure

2   on the part of Counter-defendants Preservation Aviation and

3   Jeffrey Pearson to respond to a request for information issued by

4   EPA pursuant to Section 104(e) of CERCLA, 42 U.S.C. § 9604(e)(2).

5   The United States also seeks a declaratory judgment pursuant to

6   Section 113(g) of CERCLA, 42 U.S.C. § 9613(g), that Counter-

7   defendants Preservation Aviation and Jeffrey Pearson are jointly

8   and severally liable for future costs of removal and remedial

9   action not inconsistent with the National Contingency Plan, 40

10  C.F.R. § 300, that will be incurred by the United States in

11  connection with the Site.

12                      JURISDICTION AND VENUE

13      2.   This Court has subject matter jurisdiction pursuant to

14  Sections 104(e)(5), 106(b), and 107(a) of CERCLA, 42 U.S.C. §§

15  9604(e)(5), 9606(b), 9607(a), Section 113(b) of CERCLA, 42 U.S.C.

16  § 9613(b), and 28 U.S.C. §§ 1331 and 1345.

17      3.   Venue is proper in this district pursuant to Section

18  113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b)

19  and (c) because the claims arose in this district and the release

20  and threatened releases of hazardous substances that gave rise to

21  the United States' claims occurred in this district.

22                        COUNTER-DEFENDANTS

23      4.   Preservation Aviation is a California corporation, with

24  its principal place of business in North Hollywood, California.

25

26      5.   Jeffrey Pearson is an individual residing in the State

27  of California.

28  ///

                                11

1

<u>STATUTORY BACKGROUND</u>

2      6.  Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1),

3 authorizes the President to perform removal actions in the case

4 of a release or threat of release of a hazardous substance into

5 the environment.  Section 104(a) states in relevant part:

6      Whenever (A) any hazardous substance is released or

7      there is a substantial threat of such release into the

8      environment, or (B) there is a release or substantial

9      threat of release into the environment of any pollutant

10      or contaminant which may present an imminent and

11      substantial danger to the public health or welfare, the

12      President is authorized to act, consistent with the

13      national contingency plan, to remove or arrange for the

14      removal of, and provide for remedial action relating to

15      such hazardous substance, pollutant or contaminant at

16      any time (including its removal from any contaminated

17      natural resource), or take any other response measure

18      consistent with the national contingency plan which the

19      President deems necessary to protect the public health

20      or welfare or the environment.

21 42 U.S.C. § 9604(a)(1).  The President has delegated the

22 authority to EPA.  Exec. Order No. 12,580, 52 Fed.Reg. 2923,

23 2925-27 (Jan. 23, 1987); 40 C.F.R. § 300.100.

24      7.  The term "remove or removal" is defined by Section

25 101(23) of CERCLA, 42 U.S.C. § 9601(23) as follows:

26      The cleanup or removal of released hazardous substances

27      from the environment, such actions as may be necessary

28      taken in the event of the threat of release of

hazardous substances into the environment, such actions
as may be necessary to monitor, assess, and evaluate
the release or threat of release of hazardous
substances, the disposal of removed material, or the
taking of such other actions as may be necessary to
prevent, minimize, or mitigate damage to the public
health or welfare or to the environment, which may
otherwise result from a release or threat of release.
The term includes, in addition, without being limited
to, security fencing or other measures to limit access,
provision of alternative water supplies, temporary
evacuation and housing of threatened individuals not
otherwise provided for, action taken under section
9604(b) of this title and any emergency assistance
which may be provided for under the Disaster Relief Act
of 1974 [42 U.S.C.A. §5121, et seq.].

42 U.S.C. § 9601(23).

8.  A "release" is defined in Section 101(22) of CERCLA, 42 U.S.C. §9601(22), as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment. . . ."

9.  Section 101(14) of CERCLA provides that the term "hazardous substance" includes "any element, compound, mixture, solution, or substance designated pursuant to section 9602 of [CERCLA]. . . [and] any hazardous air pollutant listed under section 112 of the Clean Air Act. . . ."  42 U.S.C. § 9601(14). Radionuclides are chemical elements with unstable nuclei that release charged particles (ions), or emit electromagnetic

13

radiation.  EPA has designated radionuclides as hazardous

substances pursuant to Section 102(a) of CERCLA, 42 U.S.C. §

9602(a) of CERCLA.  See 40 C.F.R. § 302.4.  Additionally, the

regulations promulgated by the EPA under Section 112 of the Clean

Air Act, 42 U.S.C. § 7412, list radionuclides as a hazardous air

pollutant.  40 C.F.R. § 61.01(a).

10.  The term "facility" is broadly defined in Section

101(9) of CERCLA, 42 U.S.C. § 9601(9), as "(A) any building,

structure, installation, equipment, pipe or pipeline . . . well,

pit, pond, lagoon, impoundment, ditch, landfill, storage

container, motor vehicle, rolling stock, or aircraft, or (B) any

site or area where a hazardous substance has been deposited,

stored, disposed of, or placed, or otherwise come to be located;

but does not include any consumer product in consumer use or any

vessel."

11.  Section 106(a) of CERCLA, 42 U.S.C. § 9606(a),

authorizes the President to issue an order to abate an imminent

and substantial endangerment in the case of an actual or

threatened release of a hazardous substance.  Section 106(a)

provides:

> In addition to any other action taken by a State or
> local government, when the President determines that
> there may be an imminent and substantial endangerment
> to the public health or welfare or the environment
> because of an actual or threatened release of a
> hazardous substance from a facility, he may require the
> Attorney General of the United States to secure such
> relief as may be necessary to abate such danger or

1    threat, and the district court of the United States in

2    the district in which the threat occurs shall have

3    jurisdiction to grant such relief as the public

4    interest and the equities of the case may require. The

5    President may also, after notice to the affected State,

6    take other action under this section including, but not

7    limited to, issuing such orders as may be necessary to

8    protect public health and welfare and the environment.

9    42 U.S.C. § 9606(a).

10   12.   Section 107(c)(3) of CERCLA, 42 U.S.C. § 9607(c)(3),

11   provides that a liable person that disobeys a unilateral order

12   without sufficient cause may be liable for treble damages.

13   Section 107(c)(3) states in part:

14   If any person who is liable for a release or threat of

15   release of a hazardous substance fails without

16   sufficient cause to properly provide removal or

17   remedial action upon order of the President pursuant to

18   Section 9604 or 9606 of this title, such person may be

19   liable to the United States for punitive damages in an

20   amount at least equal to, and not more than three

21   times, the amount of any costs incurred by the Fund as

22   a result of such failure to take proper action. . . .

23   42 U.S.C. § 9607(c)(3).

24   13.   In addition, a person can be fined for disobeying a

25   unilateral order without sufficient cause.   Section 106(b) of

26   CERCLA, 42 U.S.C. § 9606(b), provides in part:

27   Any person who, without sufficient cause, willfully

28   violates, or fails or refuses to comply with, any order

15

1    of the President under subsection (a) of this section

2    may, in an action brought in the appropriate United

3    States District Court to enforce such order, be fined

4    not more than $25,000 for each day in which such

5    violation occurs or such failure to comply continues.

6    42 U.S.C. § 9606(b).

7    14.  EPA is authorized to issue information requests

8    pursuant to Section 104(e) of CERCLA, 42 U.S.C. § 9604(e)(2).

9    Section 104(e)(2) provides in part:

10   Any officer, employee, or representative described in

11   paragraph (1) may require any person who has or may

12   have information relevant to any of the following to

13   furnish, upon reasonable notice, information or

14   documents relating to such matter:

15       (A) The identification, nature, and quantity

16       of materials which have been or are

17       generated, treated, stored, or disposed of at

18       a vessel or facility or transported to a

19       vessel or facility.

20       (B) The nature or extent of a release or

21       threatened release of a hazardous substance

22       or pollutant or contaminant at or from a

23       vessel or facility.

24       (C) Information relating to the ability of a

25       person to pay for or to perform a cleanup ...

26   42 U.S.C. § 9604(e)(2).  Section 104(e)(5)(B) of CERCLA, 42

27   U.S.C. § 9604(e)(5)(B), authorizes the assessment of a civil

28   penalty not to exceed $25,000 for each day of noncompliance

16

1  against any person who unreasonably fails to comply with the

2  information request.

3      15.  Pursuant to the Federal Civil Penalties Inflation

4  Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C.

5  § 3701, the maximum statutory penalty for violations occurring

6  after January 30, 1997, increased to $27,500 per day for each

7  violation.  The maximum statutory penalty for violations after

8  March 15, 2004, were increased to $32,500 per day for each

9  violation. 69 Fed. Reg. 7121-27 (February 13, 2004).

10     16.  Under Section 107(a) of CERCLA, 42 U.S.C. §9607(a), the

11  United States may recover the costs of responding to a release or

12  threatened release of a hazardous substance.  Section 107(a) of

13  CERCLA provides in pertinent part:

14     Notwithstanding any other provision or rule of law, and

15     subject only to the defenses set forth in subsection

16     (b) of this section –

17     (1) the owner and operator of a . . . facility,

18     (2) any person who at the time of disposal of any

19     hazardous substances owned or operated any facility at

20     which hazardous substances were disposed of,

21     (3) any person who by contract, agreement, or otherwise

22     arranged for disposal or treatment . . . of hazardous

23     substances owned or possessed by such person, by any

24     other party or entity, at any facility . . . owned or

25     operated by another party or entity and containing such

26     hazardous substances . . .

27     shall be liable for --

28  ///

1        (A) all costs of removal or remedial action

2        incurred by the United States Government . . . not

3        inconsistent with the national contingency plan . . .

4   42 U.S.C. § 9607(a).

5                        GENERAL ALLEGATIONS

6        17.   From the 1950s to 1996, Pen Air Parts operated the Site

7   as a buyer and seller of vintage aircraft parts and stored

8   numerous vintage aircraft gauges at the Site.   In 1996,

9   Preservation Aviation purchased the inventory of Pen Air Parts

10  and continued the same operations at the Site.   Counter-defendant

11  Jeffrey Pearson and Ms. Ann Pearson were and are the principal

12  shareholders of Preservation Aviation.   At all relevant times,

13  Counter-defendant Jeffrey Pearson was the President of Counter-

14  defendant Preservation Aviation and personally conducted Counter-

15  defendant Preservation Aviation's operations at the Site.

16  Counter-defendant Jeffrey Pearson personally controlled the

17  storage and maintenance of inventory and property at the Site,

18  including gauges which contained radionuclides.

19       18.   Prior to 2001, the Joan W. Gregg Revocable Trust (the

20  "Trust") owned the Site and leased the Site first to Pen Air

21  Parts and subsequently to Counter-defendant Preservation

22  Aviation, for the storage and sale of vintage aircraft parts.

23       19.   In 2001, the Trust transferred ownership of the Site to

24  Riverton Properties, Inc. ("Riverton Properties") which then

25  became the lessor to Preservation Aviation.

26       20.   In October 1998, the California Department of Health

27  Care Services, Radiologic Health Branch, and the Los Angeles

28  County Department of Health Services, Radiation Management

                                18

1  investigated conditions at the Site in response to a report that

2  radioactive materials from the Site were being illegally disposed

3  of at a solid waste disposal facility.   This investigation led

4  California Department of Health Care Services, Radiologic Health

5  Branch to a finding that Counter-defendant Preservation Aviation

6  was in violation of Sections 115165 and 115185 of the California

7  Health and Safety Code, because of radioactive contamination

8  throughout the facility and because the presence of radioactive

9  materials  required a radioactive materials license for commerce.

10    21.  Counter-defendant Preservation Aviation did not have a

11  license to buy or sell radioactive materials.  The source of the

12  contamination at the Site was continued leakage from old aircraft

13  instruments containing radioactive materials.  The instruments

14  were owned by Counter-defendant Preservation Aviation.

15    22.  In 1999, the California Department of Health Care

16  Services, Radiologic Health Branch ordered Counter-defendants

17  Preservation Aviation and Jeffrey Pearson from removing or

18  transporting any instrument containing radium or otherwise

19  contaminated with radioactive material unless to properly dispose

20  of the material by transfer to an authorized recipient.  In 2001,

21  the California Department of Health Care Services, Radiologic

22  Health Branch directed Counter-defendant Preservation Aviation to

23  cease operations and clean up the Site.

24    23.  By 2004, Counter-defendant Preservation Aviation had

25  not complied with the cleanup order, and the Los Angeles County

26  Department of Health Services requested assistance from EPA in

27  conducting an assessment at the Site.

28  ///

24.   EPA conducted a removal assessment in May 2004 and found substantial contamination of radium-226 and radon-222 throughout the warehouse and storage yard at the Site. Radium-226 and radon-222 are radionuclides.  Based on the Site's proximity to a public street and residences, and the fire risk posed by Site conditions, EPA determined that most of the equipment at the Site presented an imminent and substantial endangerment to public health, welfare and the environment, pursuant to Section 300.415 of the National Contingency Plan, 40 C.F.R. §300.415.

25.   In August 2004, EPA issued a Unilateral Administrative Order (the "Order") under Section 106 of CERCLA, 42 U.S.C. § 9606, to Counter-defendants Jeffrey Pearson and Preservation Aviation, and to the Trust and Riverton Properties ("Respondents") to take response actions to abate the hazard.

26.   The Order required that the Respondents submit a cleanup work plan.  No work plan was submitted by the deadline, even after EPA extended the deadline.  Counter-defendants Preservation Aviation and Jeffrey Pearson failed to comply with the Order without sufficient cause.  EPA therefore exercised its delegated authority under CERCLA and performed the removal action.

27.   At the outset of the removal action, EPA undertook a labor-intensive process of sorting through each item of equipment found in the facility, segregating contaminated objects from non-contaminated objects, for eventual return to the owner.

///

///

1    28.    When Counter-defendant Jeffrey Pearson visited the Site

2    in September 2004, he declined EPA's offer to return the

3    non-contaminated items.

4    29.    Counter-defendant Jeffrey Pearson told EPA personnel

5    that the segregated non-contaminated items were of little or no

6    value.

7    30.    After Counter-defendant Jeffrey Pearson stated that the

8    segregated non-contaminated items were of little or no value, EPA

9    determined that further segregation of the items would require

10   approximately 2,500 hours of extra labor, which would be

11   cost-prohibitive, particularly in light of Counter-defendant

12   Jeffrey Pearson's expressed lack of interest.

13   31.    EPA completed the removal action with money from the

14   Hazardous Substance Response Trust Fund originally established by

15   Section 221 of CERCLA, 42 U.S.C. § 9631, which is now called the

16   "Hazardous Substance Superfund" or "Superfund."  26 U.S.C. §

17   9507.  Ultimately, the removal involved sending approximately one

18   million contaminated and other items for off-site disposal and

19   demolishing a warehouse building.

20   32.    On February 15, 2006, EPA sent demand letters to all of

21   the identified potentially responsible parties for the Site.  In

22   the letter to Counter-defendant Jeffrey Pearson and Preservation

23   Aviation, EPA demanded payment of the costs it had incurred at

24   the Preservation Aviation Site through December 2005, in the

25   amount of $6,044,299.27.

26   33.    On April 17, 2006, EPA sent Counter-defendant Jeffrey

27   Pearson a request for information pursuant to Section 104(e) of

28   CERCLA, 42 U.S.C. 9604(e), seeking clarification regarding

1    aspects of the financial means of Counter-defendants Jeffrey

2    Pearson and Preservation Aviation.  Counter-defendants

3    Preservation Aviation and Jeffrey Pearson unreasonably refused to

4    comply with the April 2006 information request.  EPA completed

5    the removal action in December 2007.

6                        FIRST CLAIM FOR RELIEF

7     (Cost Recovery against Counter-defendant Preservation Aviation)

8         34.  The United States repeats the allegations of Paragraphs

9    1 through 33 of this Counter-claim as though set forth in full

10    herein.

11        35.  Counter-defendant Preservation Aviation is a person

12    within the meaning of Section 101(21) of CERCLA, 42 U.S.C. §

13    9601(21).  The Site is a facility within the meaning of Section

14    101(9) of CERCLA, 42 U.S.C. § 9601(9).  In addition, each piece

15    of equipment containing radionuclides was a facility within the

16    meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

17        36.  There was a release and a threat of release of a

18    hazardous substance from the Site and the equipment containing

19    radionuclides, including but not limited to, radium-226 and

20    radon-222.

21        37.  The release and threat of release of hazardous

22    substances at or from the Site and the equipment, caused EPA to

23    incur costs of removal.

24        38.  Counter-defendant Preservation Aviation was the owner

25    of the equipment that caused a release and posed a threat of

26    further release of radionuclides.  Counter-defendant Preservation

27    Aviation was the operator of the Site at a time that hazardous

28    substances were disposed of at the Site.

39.   Counter-defendant Preservation Aviation is liable under Sections 107(a)(1) and (2) of CERCLA, 42 U.S.C. § 9607(a)(1) and (2), as the owner of the equipment that posed a threat of release of hazardous substances, and as the operator of a facility, during the time of disposal of hazardous substances, from which facility there has been a release or a threatened release of a hazardous substance.

40. Counter-defendant Preservation Aviation is jointly and severally liable to the United States under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all costs incurred by the United States in connection with the Site that are not inconsistent with the National Contingency Plan.

<u>SECOND CLAIM FOR RELIEF</u>

(Cost Recovery against Counter-defendant Jeffrey Pearson)

41.   The United States repeats the allegations of Paragraphs 1 through 40 of this Counterclaim as though set forth in full herein.

42.   Counter-defendant Jeffrey Pearson operated the Site during the time that hazardous substances were disposed of at the Site.

43.   Counter-defendant Jeffrey Pearson is liable under CERCLA as the operator of a facility during the time of disposal of hazardous substances, from which facility there has been a release or a threatened release of a hazardous substance.

44.   Counter-defendant Jeffrey Pearson is jointly and severally liable to the United States under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all costs incurred by the United

///

States in connection with the Site that are not inconsistent with the National Contingency Plan.

THIRD CLAIM FOR RELIEF

(Treble Costs against Counter-defendants

Preservation Aviation and Jeffrey Pearson)

45.  The United States repeats the allegations of Paragraphs 1 through 44 of this Counterclaim as though set forth in full herein.

46.  Counter-defendants Preservation Aviation and Jeffrey Pearson failed to conduct a removal action at the Site, and thereby violated the Order.  Their failure to comply with the Order was without sufficient cause.  Counter-defendants Preservation Aviation and Jeffrey Pearson are jointly and severally liable to the United States for punitive damages in an amount at least equal to, and not more than, three times the amount of any costs incurred by the Superfund pursuant to Section 107(c)(3) of CERCLA, 42 U.S.C. § 9607(c)(3), for such response actions.

FOURTH CLAIM FOR RELIEF

(Penalties against Counter-defendants

Preservation Aviation and Jeffrey Pearson

For Failing to Comply with Unilateral Order)

47.  The United States repeats the allegations of Paragraphs 1 through 46 of this Counterclaim as though set forth in full herein.

48.  Counter-defendants Preservation Aviation and Jeffrey Pearson violated the Order without sufficient cause, and the

///

1  Court should assess a penalty of not more than $32,500 for each

2  day that the violation continued.

3                    FIFTH CLAIM FOR RELIEF

4              (Penalties against Counter-defendants

5            Preservation Aviation and Jeffrey Pearson

6          For Failing to Respond to Information Request)

7        49.  The United States repeats the allegations of Paragraphs

8  1 through 48 of this Counterclaim as though set forth in full

9  herein.

10       50.  Counter-defendants Preservation Aviation and Jeffrey

11 Pearson unreasonably failed to comply with EPA's 2006 request for

12 information.  Pursuant to Section 104(e)(5)(B) of CERCLA, 42

13 U.S.C. § 9604(e)(5)(B), the Court should assess a penalty of not

14 more than $32,500 for each day that the violation continued.

15                   SIXTH CLAIM FOR RELIEF

16          (Declaratory Judgment against Counter-defendants

17              Preservation Aviation and Mr. Pearson)

18       51.  The United States repeats the allegations of Paragraphs

19 1 through 50 of this Counterclaim as though set forth in full

20 herein.

21       52.  The United States is entitled to entry of a declaratory

22 judgment that Counter-defendants Preservation Aviation and

23 Jeffrey Pearson are jointly and severally liable for all future

24 costs of removal and remedial action incurred in response to a

25 release or threatened release of a hazardous substance at or from

26 the Site, not inconsistent with the National Contingency Plan.

27 ///

28 ///

1              <u>PRAYER FOR RELIEF</u>

2          WHEREFORE, the United States prays that this Court:

3          1.  Enter judgment in favor of the United States on the

4     claims asserted by Plaintiffs;

5          2.  Enter judgment against Counter-defendants Preservation

6     Aviation and Jeffrey Pearson, jointly and severally, in favor of

7     the United States for all previously unreimbursed costs of

8     removal action incurred by the United States in response to the

9     release or threatened release of a hazardous substance at or from

10    the Site, plus interest;

11         3.  Enter a declaratory judgment against Counter-defendants

12    Preservation Aviation and Jeffrey Pearson and in favor of the

13    United States declaring that the Counter-defendants are liable,

14    jointly and severally, for all costs of removal or remedial

15    action to be incurred by the United States in response to the

16    release or threatened release of a hazardous substance at or from

17    the Site, not inconsistent with the National Contingency Plan;

18         4.  Enter judgment against Counter-defendants Preservation

19    Aviation and Jeffrey Pearson, jointly and severally, and in favor

20    of the United States for treble the costs incurred by EPA from

21    the Hazardous Substance Superfund because of their failure to

22    comply with the administrative order issued by EPA;

23         5.  Enter judgment against Counter-defendants Preservation

24    Aviation and Jeffrey Pearson and in favor of the United States

25    for fines not to exceed $32,500 per day for each day that

26    Counter-defendants willfully violated, or have failed or refused

27    to comply with the administrative order issued by EPA;

28    ///

1      6.   Enter judgment against Counter-defendants Preservation

2  Aviation and Jeffrey Pearson and in favor of the United States

3  for penalties not to exceed $32,500 per day for each day that he

4  failed to comply with EPA's request for information issued

5  pursuant to Section 104(e) of CERCLA; and

6      7.   Grant such other relief as the Court deems just and

7  proper.

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

Dated: May 27, 2008                  /s/
JAMES R. MacAYEAL
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources
Division


THOMAS P. O'BRIEN
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division


Dated: May 27, 2008                  /s/
JONATHAN B. KLINCK
Assistant United States Attorney

Attorneys for Defendant and Counter-
plaintiff United States of America