```
 1  LOUIS G. FAZZI, ESQ. SBN 84362
    222 N. Mountain Ave., Suite 108
 2  Upland, CA 91786
    818-770-9711
 3  louisfazzi@yahoo.com
 4  Attorney for Plaintiff
 5
 6
 7              UNITED STATES DISTRICT COURT
 8              CENTRAL DISTRICT OF CALIFORNIA
 9
10  PRESERVATION AVIATION, INC.,)   Case No.: SACV 07-1219 AG
    JEFFREY PEARSON, and        )   (MLGx)
11  ANN PEARSON                 )
                                )   ANSWER TO
12                              )   COUNTERCLAIMS; AND
              Plaintiffs,       )
13                              )
       vs.                      )
14                              )
    UNITED STATES OF AMERICA,   )
15  et al.,                     )
                                )
16            Defendants.       )
                                )
17  _____)
    PRESERVATION AVIATION, INC.,)   CROSS-CLAIM FOR
18  and JEFFREY PEARSON,        )   INDEMNITY AND/OR
                                )   CONTRIBUTION
19        Cross-Complainants,   )
                                )
20     vs.                      )
                                )
21  DEFENSE LOGISTICS AGENCY,   )
    RIVERTON PROPERTIES, INC.,  )
22  and JOAN W. GREGG           )
    REVOCABLE TRUST,            )
23                              )
          Cross-Defendants.     )
24  _____)
```



25      **COME NOW PLAINTIFFS AND COUNTER-DEFENDANTS**
26  **PRESERVATION AVIATION, INC. AND JEFFREY PEARSON**
27  **(HEREAFTER REFERRED TO COLLECTIVELY AS PAI), WHO**
28  **ANSWER THE COUNTERCLAIMS OF DEFENDANT UNITED**

---
1
**ANSWER TO COUNTERCLAIMS ETC.**

STATES OF AMERICA, AS FOLLOWS:

1. Counter-Defendants do not contest the allegations made in the Introduction (paragraph 1), Jurisdiction and Venue (paragraphs 2, 3), Counter-Defendants (paragraphs 4 and 5), and Statutory Background (paragraphs 6 through 16) parts of the Counter-Claim.

2. Answering the allegations in Paragraph 17 of the Counterclaim, Counter-Defendants admit that from the 1950s to 1996, Pen Air Parts operated the Site (described as the Preservation Aviation, Inc. property located at 10800 Burbank Boulevard and 5543 Riverton Avenue, North Hollywood, California) as a buyer and seller of vintage aircraft parts and stored numerous vintage aircraft gauges at the Site; and that in 1996, Preservation Aviation purchased the inventory of Pen Air Parts and continued the same operations at the Site; that Counter-defendant Jeffrey Pearson and Ms. Ann Pearson were and are the principal shareholders of Preservation Aviation; that at all relevant times, Counter-defendant Jeffrey Pearson was the President of Counter defendant Preservation Aviation and personally conducted Counter defendant Preservation Aviation's operations at the Site; and that Counter-defendant Jeffrey Pearson personally controlled the storage and maintenance of inventory and property at the Site, including gauges which contained radio nuclides (radon gas or radium).

3. Answering the allegations in Paragraph 18 of the Counterclaim, Counter-Defendants admit that prior to 2001, the Joan W. Gregg Revocable Trust (the"Trust") owned the Site and leased the Site first to Pen Air Parts and subsequently to Counter-defendant Preservation Aviation, for the storage and sale of vintage aircraft parts.

4. Answering the allegations in Paragraph 19 of the Counterclaim, Counter-Defendants admit that the Trust transferred ownership of the Site to Riverton Properties, Inc. ("Riverton Properties") which then became the lessor

1  to Preservation Aviation as alleged in paragraph 19 of the Counterclaim.

2          5.      Answering the allegations in Paragraph 20 of the Counterclaim,
Counter-Defendants admit that in October 1998, the California Department of Health Care Services, Radiologic Health Branch, and the Los Angeles County Department of Health Services, Radiation Management investigated conditions at the Site as alleged in paragraph 20 at pp. 18:26-28 and 19:1, but specifically deny each and every, all and singular, generally and specifically that Counter-defendant Preservation Aviation was in violation of sections 115165 and 115185 of the California Health and Safety Code at any time, and further specifically deny each and every, all and singular, generally and specifically that Los Angeles County Department of Health Services, Radiation Management or California Department of Health Care Services, Radiologic Health Branch ever made a good faith finding "that any object, building, structure, or premises is contaminated by radioactive material and constitutes a hazard to the public health" as alleged in the remainder of Paragraph 20, and deny each and every, all and singular, generally and specifically that any dealer in antique aircraft instruments was ever required to be licensed as a condition of buying, selling, storing or otherwise disposing of antique or vintage aircraft instrumentation of the kind and type owned by PAI, because such instrumentation is specifically exempt from regulation pursuant to CALIFORNIA CODE OF REGULATIONS, TITLE 17. PUBLIC HEALTH, DIVISION 1. STATE DEPARTMENT OF HEALTH SERVICES, CHAPTER 5. SANITATION (ENVIRONMENTAL), SUBCHAPTER 4. RADIATION, GROUP 2. LICENSING OF RADIOACTIVE MATERIALS, ARTICLE 3. EXEMPTIONS § 30180 (b) (24) which provides that the following is exempt from regulation: "Intact meters containing radium activated luminous material." At all times relevant to this action, PAI owned, purchased, sold and maintained antique and vintage aircraft and other instrumentation which

consisted of "intact meters containing radium activated luminous material" as described in the cited regulation.

6. Answering the allegations in Paragraph 21 of the Counterclaim, Counter-defendant Preservation Aviation admits that it did not have a license to buy or sell radioactive materials, and specifically alleges that neither PAI nor any other dealer of antique or vintage aircraft instrumentation was ever required to have or hold such a license in California. Further, while PAI admits that the purported source of contamination at the Site was continued leakage from old radium dialed aircraft instruments, and that the instruments were owned by PAI, Counter-Defendants allege that the claimed "leakage" alleged throughout the Counterclaim and specifically in Paragraph 21 was only what was deemed excessive in a residential setting, while PAI's properties where the instruments were stored was in an industrial area, not a residence, and PAI never was accused of improperly storing radium dialed instruments in any residential setting.

7. Answering the allegations in Paragraph 22 of the Counterclaim, PAI admits that in 1999, the California Department of Health Care Services, Radiologic Health Branch ordered Counter-defendants Preservation Aviation and Jeffrey Pearson from removing or transporting (sic) any instrument containing radium or otherwise contaminated with radioactive material unless to properly dispose of the material by transfer to an authorized recipient. In 2001, it is admitted that the California Department of Health Care Services, Radiologic Health Branch (hereafter the "Radiologic Health Branch") directed Counter-defendant Preservation Aviation to cease operations and clean up the Site, but PAI deny each and every, all and singular, generally and specifically that any good faith or reasonable basis existed for such an order.

8. Answering the allegations in Paragraph 23 of the Counterclaim, PAI denies that by 2004 Counter-defendant Preservation Aviation had

1  not complied with the cleanup order, and alleges that PAI submitted two
2  separate cleanup plans prepared by appropriately licensed contractors to
3  Radiologic Health Branch, which effectively ignored those plans; and admits
4  that either the Los Angeles County Department of Health Services (hereafter
5  "County Health Services") or Radiologic Health Branch requested assistance
6  from EPA in conducting an assessment at the Site, and alleges that the day
7  prior to a scheduled meeting between PAI and State of California licensing
8  officials (wherein it was likely that PAI would obtain the licensing which the
9  Radiologic Health Branch insisted PAI obtain even though the instruments
10 owned by PAI were exempt from regulation as herein alleged) the County
11 Health Services and/or Radiologic Health Branch induced the EPA to shut
12 down PAI's operations.
13         9.    Answering the allegations in Paragraph 24 of the Counterclaim,
14 PAI admits that EPA conducted a removal assessment in May 2004 and denies
15 that EPA found in good faith and based on any known applicable standards or
16 clearly stated guidelines that there was "substantial contamination" of
17 radium-226 and radon-222 throughout the warehouse and storage yard at the
18 Site or that most of the equipment at the Site "presented an imminent and
19 substantial endangerment to public health, welfare and the environment,"
20 pursuant to Section 300.415 of the National Contingency Plan, 40 C.F.R.
21 §300.415. PAI admits the allegation that Radium-226 and radon-222 are
22 radionuclides. PAI further denies that based on the Site's proximity to a public
23 street and residences, that there was any fire risk posed by Site conditions
24 existing at that time. PAI further alleges that at or about the time that EPA
25 conducted the removal assessment, Mike Garrity, a motorcycle shop owner
26 who was a tenant in what was part of PAI's Riverton Properties, specifically
27 questioned Defendant Robert Gregor of the Radiologic Health Branch and
28 asked him if there was "any contamination" he should be aware of, to which

1 | Defendant Gregor responded that "there is nothing to be concerned about."

2 |   10. Answering the allegations in Paragraph 25 of the Counterclaim, PAI admits that "In August 2004, EPA issued a Unilateral Administrative Order (the "Order") under Section 106 of CERCLA, 42 U.S.C. § 9606, to Counter-defendants Jeffrey Pearson and Preservation Aviation, and to the Trust and Riverton Properties ("Respondents") to take response actions to abate the hazard."

  11. Answering the allegations in Paragraph 26 of the Counterclaim, PAI admits that the Order required that PAI submit a cleanup work plan, and denies that no work plan was submitted by the deadline, even after EPA extended the deadline, and further specifically deny each and every, all and singular, generally and specifically that PAI failed to comply with the Order without sufficient cause or that EPA lawfully exercised its delegated authority under CERCLA and performed the removal action.

  12. Answering the allegations in Paragraph 27 of the Counterclaim, PAI lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27, and based on such lack of information and belief, denies the allegations.

  13. Answering the allegations in Paragraph 28 of the Counterclaim, PAI denies that when Counter-defendant Jeffrey Pearson visited the Site in September 2004, he declined EPA's offer to return the non-contaminated items, and alleges that PAI repeatedly told EPA officials that he wanted all the allegedly non-contaminated instruments.

  14. Answering the allegations in Paragraph 29 of the Counterclaim, PAI denies that Counter-defendant Jeffrey Pearson told EPA personnel that the segregated non-contaminated items were of little or no value, and alleges that Mr. Pearson told EPA officials that the scrap which EPA had segregated was essentially worthless but that he wanted all of the instruments.

15. Answering the allegations in Paragraph 30 of the Counterclaim, PAI denies that Counter-defendant Jeffrey Pearson stated that the segregated non-contaminated items were of little or no value, and alleges that Mr. Pearson told EPA officials that the scrap which EPA had segregated was essentially worthless but that he wanted all of the instruments, whereupon EPA unilaterally destroyed or caused the destruction of the bulk of approximately one million items in PAI's inventory, not including the scrap which PAI told EPA officials was worthless. PAI further denies that EPA determined that further segregation of the items would require approximately 2,500 hours of extra labor, which would be cost-prohibitive, and particularly denies the allegation that Jeffrey Pearson ever expressed a lack of interest in the instruments which EPA destroyed or caused to be destroyed.

16. Answering the allegations in Paragraph 31 of the Counterclaim, PAI lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31, and based on such lack of information and belief, denies the allegations that EPA completed the removal action with money from the Hazardous Substance Response Trust Fund originally established by Section 221 of CERCLA, 42 U.S.C. § 9631, which is now called the "Hazardous Substance Superfund" or "Superfund" (26 U.S.C. § 9507), and admit that the removal involved sending approximately one million contaminated and other items for off-site disposal and demolishing a warehouse building, and alleges that the non-contaminated instruments which EPA destroyed have a value between $10 and $25 million or more.

17. Answering the allegations in Paragraph 32 of the Counterclaim, PAI admit that On February 15, 2006, EPA sent demand letters to all of the identified potentially responsible parties for the Site, and that in the letter to Counter-defendant Jeffrey Pearson and Preservation Aviation, EPA demanded payment of the costs it had incurred at the Preservation Aviation Site through

1  December 2005, in the amount of $6,044,299.27.

2  18.  Answering the allegations in Paragraph 33 of the Counterclaim, PAI admit that on April 17, 2006, EPA sent Counter-defendant Jeffrey Pearson a request for information pursuant to Section 104(e) of CERCLA, 42 U.S.C. 9604(e), seeking clarification regarding aspects of the financial means of Counter-defendants Jeffrey Pearson and Preservation Aviation, and deny each and every, all and singular, generally and specifically that Counter-defendants Preservation Aviation and Jeffrey Pearson unreasonably refused to comply with the April 2006 information request and allege that their attorney responded appropriately to EPA at the time. PAI admit that EPA completed the removal action in December 2007.

19.  Answering the allegations in Paragraph 34 of the Counterclaim, PAI incorporate their responses to Paragraphs 1 through 18, above, as though set forth in full at this point.

20.  Answering the allegations in Paragraph 35 of the Counterclaim, PAI admits that Counter-defendant Preservation Aviation is a person within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21). The Site is a facility within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9). In addition, each piece of equipment containing radionuclides was a facility within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

21.  Answering the allegations in Paragraph 36 of the Counterclaim, PAI admit that there was a release or threat of release of a substance from the Site and the equipment containing radio nuclides, including but not limited to, radium-226 and radon-222, but deny each and every, all and singular, generally and specifically that any such release or threat of release was of a hazardous substance which presented any health threat which was or could have been harmful to people or the environment, and allege that any such release was

1  within acceptable limits which otherwise occur naturally in the environment.

2      22.  Answering the allegations in Paragraph 37 of the Counterclaim, PAI deny each and every, all and singular, generally and specifically the release or threat of release was of a hazardous substance(s) at or from the Site and the equipment, and further deny each and every, all and singular, generally and specifically that any such release or threatened release caused EPA to incur costs of removal pursuant to law, express or implied.

23.  Answering the allegations in Paragraph 38 of the Counterclaim, PAI admit that Counter-defendant Preservation Aviation was the owner of the equipment that caused a release and posed a threat of further release of radio nuclides, and that Counter-defendant Preservation Aviation was the operator of the Site at a time that instruments containing radium dials were present thereon, but specifically deny each and every, all and singular, generally and specifically that "hazardous substances" or substances which presented a danger to the public or the environment to the extent necessary to warrant EPA involvement were disposed of at the Site.

24.  Answering the allegations in Paragraph 39 of the Counterclaim, PAI deny each and every, all and singular, generally and specifically that Counter-defendant Preservation Aviation is liable under Sections 107(a)(1) and (2) of CERCLA, 42 U.S.C. § 9607(a)(1) and (2), as the owner of the equipment that posed a threat of release of hazardous substances, and as the operator of a facility, during the time of disposal of hazardous substances, from which facility there has been a release or a threatened release of a hazardous substance, and specifically deny each and every, all and singular, generally and specifically that "hazardous substances" or substances which presented a danger to the public or the environment to the extent necessary to warrant EPA involvement were disposed of at the Site.

25.  Answering the allegations in Paragraph 40 of the Counterclaim,

PAI deny each and every, all and singular, generally and specifically that Counter-defendant Preservation Aviation is jointly and severally liable to the United States under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all costs incurred by the United States in connection with the Site that are not inconsistent with the National Contingency Plan.

26. Answering the allegations in Paragraph 41 of the Counterclaim, PAI incorporate their responses to Paragraphs 1 through 25, above, as though set forth in full at this point.

27. Answering the allegations in Paragraph 42 of the Counterclaim, PAI admits that Counter-defendant Jeffrey Pearson operated the Site, but deny each and every, all and singular, generally and specifically each and every, all and singular, generally and specifically the allegation that hazardous substances were disposed of at the Site, and deny each and every, all and singular, generally and specifically that any such release or threat of release was of a hazardous substance which presented any health threat which was or could have been harmful to people or the environment, and allege that any such release was within acceptable limits which otherwise occur naturally in the environment.

28. Answering the allegations in Paragraph 43 of the Counterclaim, PAI deny each and every, all and singular, generally and specifically the allegations that Counter-defendant Jeffrey Pearson is liable under CERCLA as the operator of a facility during the time of disposal of hazardous substances, from which facility there has been a release or a threatened release of a hazardous substance.

29. Answering the allegations in Paragraph 44 of the Counterclaim, PAI deny each and every, all and singular, generally and specifically the allegations that Counter-defendant Jeffrey Pearson is jointly and severally liable to the United States under Section 107(a) of CERCLA, 42 U.S.C. §

9607(a), or at all, or for all costs incurred by the United States in connection with the Site that are not inconsistent with the National Contingency Plan.

30. Answering the allegations in Paragraph 45 of the Counterclaim, PAI incorporate their responses to Paragraphs 1 through 29, above, as though set forth in full at this point.

31. PAI deny each and every, all and singular, generally and specifically the allegations in Paragraph 46 of the Counterclaim.

32. Answering the allegations in Paragraph 47 of the Counterclaim, PAI incorporate their responses to Paragraphs 1 through 31, above, as though set forth in full at this point.

33. PAI deny each and every, all and singular, generally and specifically the allegations in Paragraph 48 of the Counterclaim.

34. Answering the allegations in Paragraph 49 of the Counterclaim, PAI incorporate their responses to Paragraphs 1 through 33, above, as though set forth in full at this point.

35. PAI deny each and every, all and singular, generally and specifically the allegations in Paragraph 50 of the Counterclaim.

36. Answering the allegations in Paragraph 51 of the Counterclaim, PAI incorporate their responses to Paragraphs 1 through 35, above, as though set forth in full at this point.

37. PAI deny each and every, all and singular, generally and specifically the allegations in Paragraph 52 of the Counterclaim.

## AFFIRMATIVE DEFENSES
### FIRST AFFIRMATIVE DEFENSE
(Violation of Substantive and Procedural Due Process)

1. The actions of Defendants, and each of them, which resulted in the cessation of PAI's business operations and the destruction of approximately

one million separate items of instrumentation was in violation of PAI's substantive due process rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, in that no dealer of antique or vintage aircraft and/or marine instruments could reasonably have known that the simple possession of such instruments could result in the action taken against PAI by Counter-Defendants as alleged in the Complaint herein.

2. The actions of Defendants, and each of them, which resulted in the cessation of PAI's business operations and the destruction of approximately one million separate items of instrumentation was in violation of PAI's procedural due process rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

**SECOND AFFIRMATIVE DEFENSE**

(Act of War)

3. To the extent any alleged obligation or duty to act exists or existed as alleged in the Counterclaims, Counter-Defendants were and are excused from liability therefor because the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by one or more acts of war, in that any such damages were the direct and proximate result of the placement in the public domain of the numerous items of radium containing instruments, without any guideline(s) whatsoever for the safe maintenance, use, storage or shipment thereof, all of which were produced to specifications demanded by the United States of America for use during war time, and as a direct result of the manufacture, distribution, storage and use of same for and during times of war between the United States and the Axis powers in World War II and/or during the Cold War with the former Soviet Union, and/or the Korean War and/or for use during the Viet Nam war and/or for use during the Gulf War I and/or the present war in Iraq, and/or during the

war action by the United States in Granada, Panama, the former Yugoslavia (i.e., Bosnia), Somalia, and/or other war action by the United States which has been or is classified, providing a complete defense to the Counterclaims pursuant to 42 U.S.C. § 9607 (b) (2).

### THIRD AFFIRMATIVE DEFENSE
(Apportionment, Indemnification, Contribution)

4.   To the extent any alleged obligation or duty to act exists or existed as alleged in the Counterclaims, Counter-Defendants were and are excused from liability therefor because the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by the act or omission of a third party not an employee or agent of Counter-Defendants, including but not limited to the Defense Logistics Agency, which on information and belief is the successor in interest to the U.S. Defense Department, which on information and belief was the successor to the U.S. War Department, Riverton Properties, Inc., and the Joan W. Gregg Revocable Trust which owned the property leased by Counter-Defendants in North Hollywood, California.

### FOURTH AFFIRMATIVE DEFENSE
(Combination of Defenses)

5.   To the extent any alleged obligation or duty to act exists or existed as alleged in the Counterclaims, Counter-Defendants were and are excused from liability therefor because the release or threat of release of a hazardous substance and the damages resulting therefrom were caused by any combination of (a) act of God, (b) act of War, and (c) by the act or omission of a third party not an employee or agent of Counter-Defendants.

Wherefore, Counter-Defendants pray for the following relief:

1.   That the court enter judgment in favor of the Counter-Defendants on the claims asserted by the United States;

2. That the court enter a declaratory judgment against the United States declaring that the Counter-defendants are not liable for any costs, fines, levies or other sums or forms of obligation such as purported treble costs or fines, of removal or remedial action incurred by the United States as alleged in the Counter-claims, because all such costs are the sole responsibility of the United States and not Counter-Defendants;

3. That the court enter judgment against the United States on all Counter-Defendants' claims; and,

4. For such other and further relief as the court may deem just and proper.

Dated: June 24, 2008

_____
Louis G. Fazzi, Esq.
Attorney for Counter-Defendants

# CROSS-CLAIM

1. Prior to 2001, the Joan W. Gregg Revocable Trust (the"Trust") owned "the Site" located at 10800 Burbank Boulevard and 5543 Riverton Avenue, North Hollywood, California and leased the Site first to Pen Air Parts and subsequently to Counter-defendant Preservation Aviation, for the storage and sale of vintage aircraft parts, among other uses.

2. In 2001, the Trust transferred ownership of the Site to Riverton Properties, Inc. ("Riverton Properties") which then became the lessor to Preservation Aviation. At all times herein relevant, either the Trust or Riverton Properties owned the land and buildings where more than one million separate and individual aircraft, marine and other instruments and pieces of hardware were stored for many years prior to the inception of the leasehold interest in favor of Cross-Complainants Preservation Aviation and Pearson.

3. On information and belief, Cross-Complainants allege that the Defense Logistics Agency is an agency of the United States government and is the successor in interest to the U.S. Department of Defense, the U.S. Department of War, and to the United States military services which contracted for, established specifications for and ordered all the instruments and other items of hardware which were eventually housed and stored at the Site and which were present at the time the EPA commenced its action as described in the Counterclaims made against Plaintiffs, Counter-Defendants and Cross-Complainants.

4. This Court has subject matter jurisdiction pursuant to Sections 104(e)(5), 106(b), and 107(a) of CERCLA, 42 U.S.C. §§ 9604(e)(5), 9606(b), 9607(a), Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1331 and 1345.

5. To the extent any alleged obligation or duty to act exists or existed as alleged in the Counterclaims alleged by the United States, Counter-

1  Defendants were and are excused from liability therefor because the release or
2  threat of release of a hazardous substance and the damages resulting therefrom
3  were caused solely by the act or omission of a third party not an employee or
4  agent of Counter-Defendants, including but not limited to the Defense
5  Logistics Agency, which on information and belief is the successor in interest
6  to the U.S. Defense Department, which on information and belief was the
7  successor to the U.S. War Department, Riverton Properties, Inc., and the Joan
8  W. Gregg Revocable Trust which owned the property leased by Counter-
9  Defendants in North Hollywood, California.

    6.  To the extent any alleged obligation or duty is imposed on Cross-Complainants based in whole or in part on a cause for which Cross-Defendants, or any of them, were or are responsible, in whole or in part, Cross-Complainants are entitled to indemnity, contribution, offset or other relief commensurate with the respective rights and obligations of each of the parties hereto.

    Wherefore, Cross-Complainants pray for the following relief:

    1.  That the court enter judgment in favor of the Cross-Complainants on the claims asserted by the United States;

    2.  That the court enter judgment declaring that Counter-defendants are not liable for any costs, fines, levies or other sums or forms of obligation such as purported treble costs or fines, of removal or remedial action incurred by the United States as alleged in the Counter-claims, because all such costs are the sole responsibility of the United States or the Cross-Defendants and not Cross-Complainants;

    3.  That the court enter judgment fixing the rights and liabilities, if any, or the respective parties hereto; and,

    4.  For such other and further relief as the court may deem just and proper.

1  Dated: June 24, 2008

*[signature]*
Louis G. Fazzi, Esq.
Attorney for Cross-Complainants

**PROOF OF SERVICE**
§1013a (3) **CODE CIV. PROC.** Revised 5/1/88

STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action, my business address is: 222 N. Mountain Ave., Suite 108, Upland, CA 91786

    On June 24, 2008, I served the foregoing document described as **ANSWER TO COUNTERCLAIMS; AND CROSS-CLAIM FOR INDEMNITY AND/OR CONTRIBUTION** on the interested parties in this action

[X] by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list: [see attached mailing list]

[ ] by placing [ ] the original [X] a true copy thereof enclosed in sealed envelopes addressed as follows:

[ ] **BY PERSONAL SERVICE**

[X] **BY MAIL**

    [X]    I deposited such envelope in the mail at Upland, California. The envelope was mailed with postage thereon fully prepaid.

    [ ]    As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Upland, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    **BY OVERNIGHT DELIVERY SERVICE**    I deposited such envelope in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for, addressed to the person on whom it is to be served.

[ ]    **BY FACSIMILE** I caused such document to be delivered to the office of the addressee, via facsimile machine pursuant to CCP §1013(e). This document was transmitted from the office of Louis G. Fazzi in Upland, California, on the date set forth above, during normal office hours of 8:00 a.m. and 5:00 p.m.

[ ]    **STATE**    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]    **FEDERAL** I declare under penalty of perjury that I am employed in the office of a member of the bar or permitted to practice before this court, at whose direction the service was made.

Executed June 24, 2008, at Upland, California.

_____
Louis G. Fazzi

| | |
|---|---|
| 1 | SERVICE MAILING LIST |
| 2 | <u>Attorneys for the United States of America</u> |
| 3 | RONALD J. TENPAS<br>Assistant Attorney General |
| 4 | Environment & Natural Resources Division<br>United States Department of Justice |
| 5 | JAMES R. MacAYEAL<br>Trial Attorney Environmental Enforcement Section |
| 6 | United States Department of Justice<br>P.O. Box 7611 |
| 7 | Washington, D.C. 20044-7611 |
| 8 | THOMAS P. O'BRIEN<br>United States Attorney |
| 9 | LEON W. WEIDMAN<br>Assistant United States Attorney |
| 10 | Chief, Civil Division<br>JONATHAN B. KLINCK |
| 11 | Assistant United States Attorney<br>300 North Los Angeles Street, Suite 7516 |
| 12 | Los Angeles, California 90012 |